Next case, call for oral argument, is Bradshaw v. Union Pacific Railroad. Counsel? I ask for your support. Good morning. I'm William Gavin for Ken Bradshaw. Mr. Bradshaw was employed by the railroad defendant from 1960 to 2003 as a brake line conductor. He developed osteoarthritis in both knees that ultimately led to a knee replacement of both knees. This is what some lawyers call a cumulative trauma or repetitive trauma FBLA case. Mr. Bradshaw filed a two-count complaint, one count under the FBLA and the other count pleaded under the terms of the Locomotive Boiler Inspection Act, and the case proceeded to trial in St. Clair County in April and May of 2009. We began the case by calling an expert witness, Dr. Andres, who's an ergonomist, biomechanical expert, who talked about cumulative trauma and how micro-repetitive trauma ultimately leads to degeneration of joints. Dr. Andres identified certain activities that Mr. Bradshaw performed in his years of service that led to these repetitive trauma injuries. He also addressed defendant's negligence for not having an ergonomics program in place to prevent the types of injuries that were being claimed. Treating physician Dr. Forbes McMullen related the injuries to the activities. After the plaintiff rested, the defendant moved for a directive verdict, and that motion was denied for both counts. At that point, the record will show that the defense counsel advised the court that he intended to call two controlled expert witnesses, a Greg Weems and a George Page. The plaintiff promptly objected and filed a motion to exclude these witnesses because no conclusions or opinions for either witness had been disclosed in the Rule 213F3 disclosures as, of course, required by rule and the court's case management order. There was a lengthy hearing on this before defendant began its presentation of its case, and during that hearing, defense counsel admitted that the disclosures contained no conclusions or opinions, which is clearly and expressly required by the rule, which states that if these things are not disclosed, it shall not be admitted. Despite that, and despite the record reflecting that the trial court understood what Rule 213 said and the fact that defense counsel admitted that there was noncompliance with the rule, the court first ruled, well, we've come this far. I'm going to allow the testimony, and that was the break of the day. The record will show. The next morning, the court came in and said, I've reconsidered this, and I'm going to allow the testimony to the extent that it addresses the things that Dr. Andres testified about. Of course, that's no limitation at all, and it has no basis whatsoever in Rule 213. When Mr. Weems took the stand as well as Mr. Page took the stand, plaintiff renewed his objection and objected to any testimony from these expert witnesses on the grounds of noncompliance with Rule 213. These objections were overruled, and Mr. Weems began to testify and state all sorts of conclusions. It's important to note in understanding why defendants' arguments have no merit is neither one of these witnesses had personal observations of Mr. Bradshaw's work. These were witnesses who offered conclusions and opinions based on some information available to them. Mr. Weems stated that Mr. Bradshaw spent very small amounts of time walking on ballasted surfaces. The term ballast means rocks along the right-of-way of the railroad. He spent very minor amounts of time walking on sloped surfaces. He said that Mr. Bradshaw's last assignment, in that last assignment, there was a reduction of the amount of time that Mr. Bradshaw walked on ballasted surfaces. He gave numerous other opinions that are set forth in the brief and conclusions contrary to Rule 213. Of course, there's to be strict compliance with the rule, and his testimony should have been excluded. Mr. Page came in and talked about a study that had been done by the Burlington Northern Railroad. Actually, Dr. Andrus had first talked about that study in the early 1990s, which showed essentially that the faster a train is going when a brakeman gets off, the more body forces that are experienced when that worker hits the ground. It's kind of self-evident, I think. But specifically, the study showed that at 8 miles an hour, when a worker gets off a locomotive or a car, he experiences 15 times body weight on his joints and his lower extremities. George Page came in and said that this was not a valid study, and it did not show increased risk of osteoarthritis in the legs of workers. He also repeated the conclusions about walking on level ground in ballast. It's our position that the Court urged when it allowed this testimony, allowed any of this testimony, these witnesses should not have been permitted to testify at all because there was no compliance, no effort at all at any compliance with Rule 213. Did you object? I did, sir. I objected immediately upon defense counsel telling the Court that this was his plan for the next two witnesses. We had that hearing. When each witness was called to the stand, I renewed my objection, and there were some additional objections throughout the testimony of each witness. The railroad will say, of course, that we waived by not objecting at every question, but we cited cases in our revisory that state that a party is allowed to rely on rulings, and it's not necessary to repeat an objection at every question. Were these experts deposed? They were not, Your Honor. And that was another argument that the railroad made in trials. Well, you didn't take their deposition. And I showed the trial court, and the record will show that apparently I convinced the trial court that a party is not required to go to the time and expense and trouble of taking a deposition to cure another party's defect in compliance with rules. This testimony was prejudicial to plaintiffs because it went to the heart of the case. It went to negligence, and it went to causation. The second point was or is that despite having denied motions for a directed verdict on the Locomotive Boiler Inspection Act, when we came to the conference on jury instructions, the court refused to instruct the jury on the Locomotive Boiler Inspection Act. Of course, the principal difference between the two theories is the Boiler Inspection Act does not require negligence. It's, in essence, a strict liability statute. We had introduced evidence, again, the faster the locomotive was going, the greater the chance of injury to the plaintiff. Was that a locomotive's defect? No, sir. It was an unsafe condition of the locomotive. That was one of the arguments that the railroad made in trials. You can only have a Boiler Inspection Act case if there's a mechanical defect in the locomotive. Clearly, that's not the law. Clearly, a mechanical defect can support a Boiler Inspection Act case, but it need not be a mechanical defect. We cited a case there, and there's also a 1994 case from this court where that principle is recognized in a little bit different context. But that case, Thomas v. Norfolk and Western, 1994, illustrates these principles that we're talking about. A locomotive that is operated in an unsafe manner is a violation of the Boiler Inspection Act. The unsafe manner here was two things. The speeds of the locomotives that Mr. Bradshaw had to get on and off, which he and others testified were often in the area of 8 to 12 miles per hour, which the Burlington Northern study showed to be an increasingly unsafe speed. Also, there was testimony about how high he had to step up and step down off the locomotive sill steps. Sill step may not be the right term, but the steps on the locomotives. Dr. Andres had talked about how the height plays a role in producing cumulative promise. The Boiler Inspection Act is to be liberally construed, according to Lilly v. Grand Country Western Railroad. The defendant, Railroad, argued, well, you can't have a Boiler Inspection Act case here because there's not one identifiable locomotive we're talking about. We're talking about a stream of locomotives, many different locomotives over 43 years. But that's the case in all occupational disease cases. Please review the Locomotive Boiler Inspection Act. A worker occupies many different locomotives, and if they're unsafe for whatever characteristic, whether it be the atmosphere or the speed or what have you, it's a violation. It should be pointed out to the court, and I did so in my brief, that I am not aware of any reported decision on this subject of whether the speed of a locomotive is an unsafe condition in the context of a cumulative trauma disorder case. The third point of error, Your Honor, is that at trial, Mr. Bradshaw was retired. And in pretrial motions, the topic was brought up, well, is there a wage loss claim in this case? And defense counsel and I agreed on the record that lost wages, lost benefits are not at issue. But despite that, in all of the questioning that the Railroad Defense Counsel did, the plaintiff and his co-worker witnesses, they were asked over and over again, the railroad paid you a good wage, it provided you benefits, it provided you vacation time, retirement, and on and on, until finally defense counsel asked Mr. Bradshaw, how much money did you make in your last year of work? And I was objecting as this was going along on the grounds of irrelevance. When the trial court asked defense counsel, well, what does this have to do with the case? The response was, well, these guys talked about working long hours. We want to show that they were well paid for those long hours. And what this does, what this did, was inject assumption of risk into the case. Assumption of risk under the Federal Employees Liability Act is not a defense and could have led the jury to believe, well, these guys were compensated for whatever illness or loss or condition they now have. It should be pointed out, and it is true, that the court gave an instruction, an Illinois pattern jury instruction that stated that assumption of risk is not a defense in an FBLA case. But it's plaintiff's contention that that's a very difficult concept for the jury to take that instruction and match it up with the evidence of wages. The defendant presented a detailed defense at trial based on various safety rules that the railroad had. And there was a large volume of safety rules admitted into evidence and displayed to the jury in one form or another. But when it came time for the jury to deliberate, defense counsel made copies, excerpts of safety rules, and not just excerpts, but then took a highlighter and highlighted individual safety rules that defense counsel had been talking about in the case. I objected to the submission of not the excerpts necessarily, but the highlighted portions of the excerpts, which, of course, emphasized certain safety rules and tended to place the duty of due care on the plaintiff rather than the defendant, which, of course, had a duty of non-delegable duty. Our final point of error that we've asserted in this appeal is that the court wrongfully excluded certain exhibits, three exhibits, which would have shown to the court the defendant had noticed that its employees were sustaining musculoskeletal disorders as a result of their work. Going back to Mr. Page, I took his deposition, Justice Chapman, I should say that. I was just noting that. I was going to ask you about that. In a corporate designee context, I did not take his deposition in the context of a controlled expert. His corporate designee deposition was taken sometime earlier in the case, and I played a portion of that to the jury. What is the difference? I mean, it says controlled expert witness under three, and it says a person giving expert testimony who is the party, and I would presume that would be the designee, the party's current employee or the party's retained expert. So isn't that the same thing? Isn't the designee the same as the party? The corporate designee deposition was limited to certain topics, and we went into that deposition to find out what the railroad would say on certain topics, which were not the same as topics that were disclosed in the Rule 233, the Rule 213 disclosure, Your Honor, does say Mr. Page may be called as an expert to the extent of what's contained in his corporate designee deposition, and we did not make any, we did not object to any part of his corporate designee deposition. And just generally, what was that testimony about, very generally? It was what was your ergonomics program, have you done any studies to identify the occurrence of cumulative trauma amongst the railroad employees, to my best memory, Your Honor. But in that corporate designee deposition, which was portrayed to the jury, Mr. Page testified, and we did not make a Rule 213 objection to this testimony, but he testified there is no risk to railroad employees from walking on balance. The exhibits that we offered into evidence, which are a series of claims, hundreds of claims, over the course of 20-some years, showed just the opposite, that there were many people making musculoskeletal claims among their railroad employees. The second reason why it was relevant, and should have been admitted, is because Dr. Andres was cross-examined by the Railroad Council and said, Dr. Andres, do you fault the railroad for not having an ergonomics program? And Dr. Andres said, I wouldn't fault them unless they were receiving musculoskeletal claims, musculoskeletal disorder claims. And so the railroad established this with my expert on cross-examination, but then the court handcuffed the plaintiff by not being able to show that in fact they were receiving musculoskeletal claims amongst its railroad employees. So by doing so, the court wrongfully excluded this relevant evidence. And for the cumulative effect of these errors, and singularly as well, the plaintiff requests that the court reverse the judgment of the jury's verdict and order a new trial on all issues. Thank you, Counsel. Counsel? May it please the Court? Yes. My name is Heath Folks and I represent Union Pacific in this case. The plaintiff argues that the trial court erred in permitting the testimony of Greg Williams and George Page because defendant's expert disclosure was deficient and because these witnesses testified regarding opinions that were not contained in those disclosures. However, this argument presents no basis to disturb the trial court's ruling for five reasons. First, the disclosures adequately informed the plaintiff of the factual testimony that was actually presented. Second, to the extent the disclosures were deficient in any way, Third, much of the testimony complained of here was factual and not opinion testimony. Fourth, the plaintiff has waived any objection to the testimony complained of here because his attorney failed to object at the time the testimony was presented or, with regard to some of the evidence, the plaintiff's attorney actually elicited the testimony himself. And finally, when you consider all of the evidence in the case, any error that may have been committed in admitting this evidence was harmless. Obviously, the trial court found that there was some violation of Supreme Court Rule 213F. It appears the trial court did find that the disclosure was deficient in some way, yes. And so allowing them to testify in any regard may have prejudiced the jury. They don't know what 213F is. Why would they be allowed to testify about anything? Well, I would have to respectfully disagree. Perhaps that would be the case if these witnesses were not disclosed at all. But the defendant did disclose these witnesses. There was a disclosure about the subject of the testimony. And if you look at the disclosures, while if I were drafting this disclosure today, I obviously would want it to be more detailed about the actual conclusions and opinions that would be presented. The disclosures do reveal the subject matters that were admitted. With regard to Mr. Weems, the disclosure states in the relevant part that Mr. Weems would provide expert opinion testimony regarding his observations and measurements of the subject workplaces or substantially similar workplaces, whether the plaintiff's occupational environment was reasonably safe when compared to exposures associated with adverse health outcomes in the relevant peer-reviewed literature, comparison of measurements of plaintiff's exposures to occupational physical factors within published guidelines. So with regard to the factual testimony that was presented here, what is at the heart of it the opinions and conclusions? And I just happened to be looking at Mr. Page's disclosure, and there's not one statement in there about what opinions or conclusions he's going to give. Well, Mr. Page's disclosure does state that Mr. Page would testify concerning analysis of tasks, tools and equipment, rules and processes, the evolution of processes with an expansion of relevant scientific knowledge. And that's an opinion or conclusion? Your Honor, these are subjects about which Mr. Page testified. Right. I'm asking about, it says in addition to the subject matter in which the witness should testify, which is I, double I is they shall also disclose the conclusions and opinions of the witness in the basis, therefore. Is there anything in this disclosure that satisfies that requirement? Your Honor, again, I think the disclosure states the general subjects of the witnesses would testify. Beyond that, I would have to agree that there are specific statements regarding the specific opinions. However, the testimony that was actually admitted at trial, we would argue, was not in the nature of opinion. It was in the nature of factual testimony. And these disclosures were adequate to disclose the factual testimony that was actually presented and admitted at trial. With regard to Mr. Page's disclosure, it goes on to say that he would testify regarding epidemiological and scientific literature related to the hypothesized work-relatedness of musculoskeletal disorders of the spine and extremities. So what the plaintiff is complaining about here is all these instances are instances in the testimony where these witnesses testified regarding literature that they reviewed and what that literature said. Which are essentially opinions and conclusions, correct? They're not facts. It's a fact whether a study states a certain thing. These witnesses didn't testify that they concluded in their expert opinion that a certain fact was true. They testified whether an article stated something or an article or a study found something. That's why I'm saying that the trial court properly exercised its discretion to limit these witnesses' testimony rather than exclude it completely. Well, how is that relevant information unless the witness ties it into the case by saying something like, I agree with this study or that conclusion or that study is relevant to this situation? I mean, you can't just spew out facts randomly unless they are relevant to the case. But they're still not expert opinions is what I'm saying. And a lay witness is allowed to testify regarding facts that are related to the case. Related to the specific case. And I believe lay witnesses would also be allowed to testify regarding facts that a lay person could observe in general, even if it's not a fact that they observed in the context of this particular case. If it's regarding a subject that would be relevant to an issue in the case, but it's an observation that occurred outside the context of this particular case. Wouldn't they be coming to a conclusion, then, or an opinion? No, Your Honor, I don't believe so. We might be splitting hairs. Generally, though, it's relegated to the actual factual situation. Thinking of speed of a vehicle, whether or not somebody may have the appearance of intoxication, that type of thing. But I don't believe it has to be limited to the actual incident. In this case, these witnesses' testimony relates to their knowledge about, basically, about studies that were conducted. And they didn't give any conclusions or opinions related to those studies. And the plaintiff's case. No, not with regard to the plaintiff's case. I believe that Mr. Gavin mentioned one instance in which I think it was, I can't remember if it was Page or Weems testified that he did not agree with one of the studies, but I think that was elicited by Mr. Gavin in his examination. Okay, I wanted to emphasize also that with regard to the trial court's discretion, the Supreme Court in Best v. Taylor Machine Works has noted that the trial court has broad discretion under element of Supreme Court Rule 219 to craft the appropriate remedy where there is a violation of discovery. And in this case, the trial court properly exercises discretion by limiting the testimony rather than excluding it. I wanted to point out to this court a recent second district opinion that came out, I believe, after we filed our brief in this case. It's called Henry Commitment of Authority. It's found at 403 Hill Ave. 3rd, 615. Why don't you submit that as a motion to supplement authority? And we'll give counsel time to reply. Okay, I'd be happy to do that. So why don't you make your argument in that submission? Do you have a cite on that, Mr. Hooks? The cite is 403 Hill Ave. 3rd, 615. Okay, then I'll move on to the third point about this testimony. Much of it that I complained of was, as I said, factual, not expert opinion. And I was going to just go through a couple of the things. The plaintiff complains that Williams testified about the duties of a pragmatic conductor. But as I said, Mr. Williams here was merely testifying as to the factual information regarding the duties of these employees and the amount of walking that he had personally observed. So while he didn't observe the plaintiff in this case, he did observe employees in this context. The plaintiff complains that Mr. Page testified about the absence of documentation of a connection between getting on and off moving equipment and osteoarthritis. But again, Mr. Page did not offer expert opinion that there is no connection. He merely stated that he had not seen any document discussing that connection. And I also wanted to discuss a little bit the subject of waiver. The plaintiff keeps saying that they objected. They filed a motion to exclude these witnesses. But if the court will go through the transcript, you'll find that in several instances there wasn't an actual contemporaneous objection when the evidence was presented. And I would agree with the plaintiff that every instance in which the same evidence is attempted to be introduced does not require an objection, but there still has to be a contemporaneous objection when the evidence is attempted to be introduced. Was there not an off-the-record or not off-the-record hearing outside the presence of the jury in which the plaintiff said we object to these undisclosed experts testifying about any opinions? I believe so. But again, Your Honor, we would argue that the testimony that was actually presented was not in the nature of opinion testimony. It was factual information. So I would argue that that objection was not sufficient to preserve it. Then I wanted to just briefly talk about the harmless error argument. Even if this Court finds that the disclosures were deficient in some way and that the trial court should not have allowed these witnesses to testify, the plaintiff still has to show that he was prejudiced. At trial, the defendant's primary focus was that Mr. Bradshaw's condition of osteoarthritis was unrelated to any of the work that he did at Union Pacific Railroad. We argued that his condition was primarily genetics and that his excess weight aggravated this condition. On cross-examination, plaintiff's expert, Dr. McMullen, admitted that genetics plays a role in the causation of osteoarthritis. Dr. McMullen was unaware of the fact that Mr. Bradshaw's older sister had already undergone bilateral knee replacement. He also attributed the progression of his osteoarthritis. The defendant also presented the testimony of an IME doctor, Dr. Richard Lehman, who testified that in his assessment, Bradshaw's osteoarthritis was genetically caused and was unrelated to his work at the railroad. There was sufficient evidence from which the jury could have found that plaintiff's alleged injuries were caused by conditions other than his work. And therefore, we would argue that any error in the admission of his testimony was harmless. Briefly, I want to go through the other arguments on appeal. With respect to the Locomotive Inspection Act argument, by the plain terms of that statute, it's not violated unless the railroad operates a locomotive on its line which fails to meet the following test. It's in proper condition and safe to operate without unnecessary danger of personal injury. It's been inspected as required under this chapter, which is the Locomotive Inspection Act, and regulations prescribed by the Secretary of Transportation, and it can withstand every test prescribed by the Secretary under this chapter. Simply put, the plaintiff did not meet this test. The plaintiff failed to present any evidence at trial that Indian Pacific's locomotives failed to meet this test. He did not submit any evidence or authority demonstrating that the speed at which any locomotive or the heights from which the plaintiff was required to step violated any regulation or made the locomotive unsafe to operate without unnecessary danger of personal injury. The plaintiff argues that his testimony that he dismounted locomotives that were moving at speeds of 8 to 12 miles per hour was sufficient. However, the plaintiff presented no evidence that the trains were exceeding any effectively mandated speed limit at any time or any authority suggesting that operating a train at such speeds is unsafe. There was no evidence and no authority. Next, the plaintiff argued that the circuit court erred in omitting evidence of assumption of the risk. This relates to testimony that the plaintiff was compensated for the work he did. As I think the plaintiff mentioned, this testimony was presented not to show that he assumed the risk, but to rebut his testimony that he was required to work long hours at low pay. The plaintiff's attorney elicited testimony from the plaintiff on direct examination that he had worked 10 or 12 hours per day on his first day and he had only made $50. Therefore, the trial court properly found that it was fair for the defendant to then elicit testimony regarding the fact that he was compensated for the work he did. Next, the plaintiff argued that the circuit court erred in omitting evidence of assumption of the risk.  This relates to testimony that the plaintiff was compensated for the work he did. This relates to testimony that the plaintiff was compensated for the work he did. This relates to testimony that the plaintiff was compensated for the work he did. This relates to testimony that the plaintiff was compensated for the work he did. In regard to the other exhibits regarding prior claims, these were all non-traumatic claims regardless of craft, body part, alleged mechanism of injury, and geographic area in a list of acute or traumatic injury reports from slipping, tripping, or falling on pallets. These prior claims were very broad. The plaintiff did not show that these prior claims were substantially similar to the one at issue in this case. I think he argued in his opening brief that these prior claims were relevant to notice. I don't think there was any citation to authority until the reply brief. In the cases that the plaintiff cited involved prior accidents at a specific accident site or involving a specific piece of equipment, I think it was a tank car in that case, in those cases, evidence of prior accidents was admissible to establish notice that the specific site or equipment was generally hazardous. Here, the prior claims don't relate to a specific accident or a specific piece of equipment, nor do they relate to any specific body part or any specific circumstance in which the injury occurred. There's no waiver. We've got your brief. Thank you, Counsel. The Railroad has tried mightily to avoid its noncompliance with Rule 213 by recasting the testimony of Mr. Weems and Mr. Page, who were not employees of the Railroad and did not observe Mr. Bradshaw's words, as facts. Of course, what's wrong with that is that the rule says conclusions and opinions. Clearly, if this testimony was not opinion testimony, it was conclusion testimony based on what they had seen in their experiences as expert witnesses. To permit a litigant to avoid the penalty for noncompliance with Rule 213 by allowing it to say, well, this testimony was as to facts. For example, an expert witness might get up and say, well, this medical article shows this and that's a fact. If this Court were to establish a precedent like that, it would open the door on Rule 213 and completely erase the purpose of the rule, which is to avoid surprise to litigants. When did you learn that Weems and Page were going to testify? I obviously knew that they were listed in the disclosure, but as Your Honor knows, many times parties list many people who never see the courthouse. To directly answer your question as to when I learned they were going to be witnesses, my recollection was minutes before I presented this motion outside the presence of the jury to exclude their testimony, because up until that point, like most trial lawyers do, we had an agreement between us that we would tell each other the day before whom we expect to call as a witness the next day. And when I was told that, I brought the matter before Judge Lopino, and we had that lengthy hearing as cited in the brief that you asked Mr. Books about. And then all of this came forth. Mr. Weems' testimony is full of opinions, and it's full of conclusions. He talked about what the literature shows and what it doesn't show, and Justice Chapman, that is clearly an opinion. It's not a fact. At best or worst, depending on your point of view, it's a conclusion. He talked about the amounts of time that Mr. Bradshaw spent walking on ballast, whether it was slope. He even stated that walking on ballast was like walking on a carpeted tile surface like we have here in this courtroom. Now, if that's not an opinion, it's certainly a conclusion. I've cited in my brief an excerpt from the comments to Rule 213 that says it's not enough to list the topics. The party has to tell the other party what the conclusions and the opinions are going to be. The Railroad says, well, we can't have a Boiler Inspection Act because we can't cite any regulation or standard that was violated by the speeds of these locomotives. The case law on the Boiler Inspection Act couldn't be any clearer, and this principle again is shown in this Thomas case, that you don't have to violate an express regulation or standard to violate the Boiler Inspection Act. The cases are full of instances where workers have slipped on grease on locomotives. One of the several cases is where a worker was on top of a locomotive and there was ice formed up there, and that worker slipped and was hurt, and that was held to be an unsafe condition. There were no standards or regulations that say you can't have ice on a locomotive tender or there can't be grease on the steps of a locomotive. If it's an unsafe condition, it's a violation of the Act. Even the most superficial review of the record on the testimony about the payment shows that it was completely out of context that this reference, this one brief reference that Mr. Bradshaw made that being paid $50 for his first day of work in 1960, there was only an offhanded remark to that that he made, and then later on we get into vacation and retirement and how much you made in 2002, the last year before you worked, and the Reserve Board is where, because of a union agreement, he was still employed but not doing duties, not daily performing duties, but being paid. There was no contention, I mean there was no issue that he wasn't doing the duties during that Reserve Board time, but still the railroad brought out that he was paid over my objections. And for the remainder of our points, we will rely on briefs unless there are any questions. I don't believe there are. Thank you, Your Honor. We appreciate the briefs and arguments. Both counsel will take the case under advisement, but we'll be in a short recess.